Judson I. Woods, Jr. Edgewater City Attorney New Smyrna Beach
QUESTION:
May the City of Edgewater absolutely prohibit the riding or driving of horses or the driving of animal-drawn vehicles on the public streets of the municipality?
SUMMARY:
Until legislatively or judicially determined to the contrary, a municipality may not absolutely bar or prohibit the riding or driving of horses or the driving of horse-drawn vehicles on the public streets within the municipality.
Chapter 316, F. S., the Florida Uniform Traffic Control Law, was enacted to `make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities.' Section 316.002. The Legislature, recognizing that the movement of traffic was controlled by a `hodgepodge of ordinances which vary as to language and penalty,' thereby resulting in an inconvenience and hazard to travelers, consolidated the existing state traffic laws contained in ch. 317, F. S. 1969, the traffic ordinances contained in ch. 186, F. S. 1969, and the suggested laws and ordinances contained in the Uniform Vehicle Code and the Model Traffic Ordinances into one `workable uniform law throughout the state and all its municipalities and political subdivisions.' See the preamble to ch. 71-135, Laws of Florida, creating ch. 316. Thus it was the intent of the Legislature in enacting ch. 316 to have uniform traffic laws and ordinances applicable throughout the state and in all municipalities. While municipalities may control certain traffic movement or parking in their jurisdictions, it is clear that any such authority is `supplemental to the other laws or ordinances of this chapter and not in conflict therewith.' See s.316.002, which also states that it is unlawful for any local authority (which includes all officials of the several counties and municipalities, s. 316.003(20)), to pass or to attempt to enforce any ordinance in conflict with the provisions of ch. 316.See also s. 316.007, stating that the provisions of ch. 316 are to be applicable and uniform throughout the state and in all political subdivisions and municipalities therein and that `no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.' Cf. s.166.021(1), (3), and (4), F. S., which operates to prohibit a municipality from exercising any power for municipal purposes or enacting any municipal regulation when expressly prohibited by law or when the subject matter is expressly preempted to the state by general law. The aforesaid provisions of ss. 316.002 and 316.007
operate to prohibit and have the effect of prohibiting any local legislation on traffic control or the enforcement thereof under the police power by a municipality, except as may be expressly authorized by the Uniform Traffic Control Law.
The issue then is whether the use of public streets by horses, either ridden or driven, is covered by the provisions of ch. 316, F. S. In fact, s. 316.003(58) defines `traffic' for the purposes of ch. 316 to mean `[p]edestrians, ridden or herded animals, and vehicles, streetcars, and other conveyances either singly or together while using any street or highway for purposes of travel.' See also s. 316.003(54), defining `street or highway' to mean `[t]he entire width between the boundary lines of every way or place of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic'; subsection (43), defining `roadway' to mean that portion of a highway improved, designed, or ordinarily used for vehicular traffic, exclusive of the berm or shoulder; and subsection (64), defining vehicle as `[a]ny device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, except bicycles or `mopeds' as defined in subsection (2) or devices used exclusively upon stationary rails or tracks.' Moreover, s. 316.073
expressly states that every person riding an animal or driving an animal-drawn vehicle upon a roadway shall be subject to the provisions of ch. 316 applicable to the driver of a vehicle, except those provisions which by their very nature can have no application.
Based upon the foregoing statutory provisions and definitions, it appears clear that the use of the public streets of a municipality by horses, ridden or driven, at least on that portion of the street used for vehicular traffic, is uniformly regulated and preempted to the state by ch. 316, F. S. I am not aware of any provision in ch. 316 which would absolutely prohibit the riding or driving of horses or the driving of animal-drawn vehicles on the public streets of a municipality, nor has any such provision been brought to the attention of this office. Compare s. 316. 2051, which prohibits the use of certain vehicles on hard-surfaced roads, i.e., any log cart, tractor, or well machine; any steel-tired vehicle other than the ordinary farm wagon or buggy; or any other vehicle or machine that is likely to damage a hard-surfaced road except to cause ordinary wear and tear on the same. Thus the riding or driving of horses or the driving of animal-drawn vehicles on the streets of a municipality is a subject covered and regulated by ch. 316, and a municipality may not therefore regulate or prohibit such traffic on the streets within its jurisdiction unless expressly authorized to do so. Cf. AGO's 077-84 (municipalities prohibited from regulating mopeds or moped drivers except as authorized by the Uniform Traffic Control Law) and 074-361 (municipality may not regulate hitchhiking unless expressly authorized to do so by the Legislature.)
The Legislature, however, in enacting ch. 316, F. S., recognized that there are conditions which require municipalities to pass certain traffic ordinances regulating municipal traffic that are not required to regulate the movement of traffic outside of the municipalities, s. 316.002. Section 316.008 expressly enumerates those areas within which municipalities may control certain traffic movement or parking on the streets and highways in their respective jurisdictions. Among those areas so enumerated, paragraphs (g), (m), (n), and (p) of s. 316.008(1) respectively empower a municipality in the reasonable exercise of its police power to restrict the use of streets; to prohibit or regulate the use of controlled access roadways by any class or kind of traffic; to prohibit or regulate the use of heavily traveled streets by any class or kind of traffic found to be incompatible with the normal and safe movement of traffic; and to designate and regulate traffic on play streets. These areas susceptible to local regulation, however, do not, in my opinion, empower a municipality to absolutely bar or prohibit the riding or driving of horses or the driving of animal-drawn vehicles on all of the streets of a municipality or to unreasonably discriminate against such use of the public streets within the municipality. As previously noted, every person riding an animal or driving an animal-drawn vehicle upon a roadway is subject to the provisions of ch. 316 applicable to drivers of vehicles except those provisions which, by their nature, can have no application; and `traffic' as used therein includes ridden or herded animals. In addition, municipalities are prohibited from enacting any local legislation to control or regulate traffic or from attempting to enforce the same, except as may be expressly authorized by the Uniform Traffic Control Law. Therefore, under certain conditions, and in the reasonable and nondiscriminatory exercise of its police power, a municipality may regulate or prohibit the use of certain streets within the municipality by any class or kind of traffic or designate and restrict or regulate the use of its public streets as prescribed by the provisions of s. 316.008. Such limited authority may not, however, be employed to absolutely bar ridden or driven horses or horse-drawn vehicles from all public streets under the jurisdiction and within the limits of the municipality.
Prepared by: Joslyn Wilson, Assistant Attorney General